[L. A. No. 6545. In Bank.—August 24, 1921.]

JOHN E. MOROPOULOS, Appellant, v. C. H. & O. B. FULLER COMPANY (a Corporation), et al., Respondents.

[1] CONSPIRACY — WHEN ACTIONABLE. — Conspiracy is not actionable unless the combination results in the perpetration of an unlawful act, or of some injurious act by unlawful means.

[2] ID.—PLEADING—SUFFICIENCY OF COMPLAINT.—A complaint in an action for conspiracy which merely alleges that the defendants entered into a conspiracy to defraud the plaintiff and that the various acts narrated were done for the purpose of defrauding him is not sufficient, unless connected with a showing of facts, which, if true, would support the charge that they were wrongful.

[3] PARTNERSHIP—ASSIGNMENT BY ONE PARTNER—FRAUD.—One member of a partnership has no right or authority to assign a leasehold or other operating assets of the partnership, the use of which had been turned over to the partnership and without which the business could not be carried on, and such assignment, without the consent of the copartner, is as to the latter a fraudulent act.

[4] ACTION FOR CONSPIRACY—PLEADING—OUSTER FROM LEASEHOLD OF PARTNERSHIP—SUFFICIENCY OF COMPLAINT.—In this action to recover damages for an alleged conspiracy between the former partner of the plaintiff and the defendants to defraud the plaintiff of his interest in the copartnership business, the complaint is held to state a cause of action as to the ouster of the plaintiff by the defendants from the partnership leasehold and conversion of the growing crops.

[5] PARTNERSHIP—WRONGFUL ASSIGNMENT OF LEASEHOLD—REMEDIES OF INJURED PARTNER.—A partner wrongfully ousted from the partnership leasehold by his copartner's wrongful assignment of the lease may either sue for restoration to possession or for damages in an amount which will compensate him for all the detriment proximately caused by the wrongful act.

[6] ID.—WRONGFUL ACTS OF PARTNER—RIGHT OF COPARTNERS—CONTINUANCE OF POSSESSION. — One member of a partnership by wrongfully violating the terms of his agreement and withdrawing from the copartnership cannot defeat' the right of the remaining partners to continue in control of the property and the business.

[7] ID. — WRONGFUL ACTS OF PARTNER — ASSIGNMENT OF INTEREST — ACTION BY COPARTNER—PLEADING—PARTIES.—Where a partnership is dissolved by the action of one partner in assigning his interests to third parties and attempting to wreck the business, it is not necessary for the other partner in an action for damages against such third person, to join the former partner as a party plaintiff or defendant.

[8] ID.—LEASEHOLD—FORMAL ASSIGNMENT UNNECESSARY.—Where one holding a lease of premises enters into a partnership with another agreeing to the use and possession of the leased property in the business, a valid interest in the lease is thereby vested in the partnership, and a formal assignment of the lease to the partnership is not required.

[9] ID.—WRONGFUL ACT OF PARTNER—MEASURE OF DAMAGES.—In an action by a partner for the wrongful assignment of a leasehold by his copartner, the plaintiff can only recover for such damages as would inure to himself individually, since if he retained the business and carried it on under the terms of the partnership agreement, he would be held to an accounting to his former partner or his assignees for their proportion of the net profits of the business and its remaining assets.

[10] PLEADING—PRAYER—DEMURRER.—A prayer for damages is not a part of the complaint, and the fact that the plaintiff prays for exemplary damages or any other relief to which he may not be entitled is not a ground for demurrer.

APPEAL from a judgment of the Superior Court of Los Angeles County. Chas. Monroe, Judge. Reversed.

The facts are stated in the opinion of the court.

1. Gist of civil action for conspiracy, notes, Ann. Cas. 1914C, 763; Ann. Cas. 1917E, 289.

7. Right of one partner to maintain action at law against other for damages from wrongful dissolution of firm, note, 4 A. L. R. 158.

James W. Bell, Geo. H. Scott and James McLachlan for Appellant.

U. T. Clotfelter and E. T. Lucey for Respondents.

SLOANE, J.—The plaintiff appeals from a judgment of dismissal by the superior court of the county of Los Angeles, after the sustaining of demurrer to his third amended complaint, without leave to amend.

Appellant makes no point on the refusal of permission to amend, and stands on the sufficiency of the complaint.

The action was brought to recover damages arising from an alleged conspiracy between the defendants and one Peter Karales, not joined as a party to the suit, in which it is charged that the parties so conspiring had wrongfully and fraudulently appropriated and destroyed a partnership business theretofore existing between the plaintiff and said Karales.

The facts alleged upon which the cause of action rests are pleaded substantially as follows:

That one Peter Karales was the owner of a four years' leasehold interest in a valuable tract of farming and dairy land in the county of Orange under a lease executed to him on the 15th of December, 1916.

That on the 30th of December, 1916, the plaintiff and Karales entered into a contract of copartnership to carry on the business of dairy farming during the term of such lease, in which it was agreed that the plaintiff would put into the business certain dairy stock and Karales would give the use of the leasehold premises.

That immediately upon the execution of said agreement of copartnership the parties thereto entered upon said leased premises and commenced the farming thereof and the operation of said dairy business, and that between the date of the partnership and May 8, 1917, the plaintiff planted about 240 acres of said lands to sugar-beets and established a dairy business thereon, which yielded a monthly profit of about one thousand dollars, and planted 150 acres in barley and oats.

That prior to the copartnership, to wit, on the eleventh day of October, 1916, Karales had purchased from the defendants in this action certain horses and mules and about

seventy-eight head of cows for six thousand five hundred dollars, and had secured the payment therefor by chattel mortgages on personal property on said leased premises, the use of which property was included in the partnership agreement subsequently entered into.

That thereafter, on or about the 31st of March, 1917, as alleged in the language of the complaint, ''said defendants conspired with said Karales to defraud the plaintiff out of the premises and business hereinbefore described, and in pursuance thereof said Peter Karales assigned the said lands to one Steve Karales, and caused the same, together with said assignment, to be recorded at said date in the office of the recorder of Orange county in said state, and thereafter and on April 7, 1917, pursuant to said conspiracy to defraud the plaintiff, the said Peter Karales and Steve Karales assigned said lease to the defendant, C. H. and O. B. Fuller Company, as additional security for the payment of the sum of money hereinbefore referred to as secured by chattel mortgages, and the further sum of one thousand dollars alleged to be due the said Steve Karales from Peter Karales, which the defendants agreed to pay; and that immediately thereafter, and in further pursuance of said conspiracy, the defendants began foreclosure proceedings under said chattel mortgages in the superior court of the county of Orange in said state against plaintiff and said Peter Karales, alleging default in payment of three months' interest.'' That judgment was entered in said action of foreclosure on May 1, 1917, for the sum of $6,855.80.

That thereupon plaintiff procured from one R. E. Ibbetson sufficient money as a loan to satisfy said judgment of $6,855.80 and to pay said one thousand dollars owing to Steve Karales, and that in consideration of the payment of said amounts defendants ''assigned and transferred said judgment and said lease to the said Ibbetson for the use and benefit of the plaintiff.''

That thereafter on May 8, 1917, a sale of said chattels under said judgment of foreclosure was made by the sheriff of said Orange County at which Ibbetson bid the amount of said judgment for the purpose of obtaining clear title thereto as security for his loan to plaintiff. That the defendants, who were also present at said sale, bid a sum in excess of that offered by Ibbetson, and their bid not being raised,

"the said chattels were thereupon sold by said sheriff to the said defendants." The complaint further alleges in this connection "that the bid of said defendants was in pursuance of said conspiracy with the said Peter Karales to defraud the plaintiff and in furtherance of said scheme," and that plaintiff was unaware of said conspiracy and had therefore arranged with said Ibbetson for only sufficient money to pay off the liens on the property sold.

That Peter Karales and Steve Karales immediately following said sale, pursuant to said scheme to defraud plaintiff, made another assignment and transfer of said lease to an agent of defendants and it was thereafter assigned to the defendant, Pioneer Ranch Company.

That thereafter the defendants took possession of the leased premises, ousted and ejected plaintiff from the possession, installed Peter Karales as their employee and manager, and proceeded to operate the business of the ranch to the plaintiff's damage in various sums aggregating thirty-four thousand five hundred dollars from loss of use and occupation of the premises, beet crop, hay, and oats, and plaintiff demanded judgment for that amount, together with ten thousand dollars punitive damages and costs.

If plaintiff has stated facts under which he may maintain this action, the gist of such cause of action is contained in the last above paragraph. The preceding part of the narrative fails to set up any wrongful acts of the defendants.

The plaintiff by the foregoing averments attempts to allege a conspiracy between his former copartner and the defendants to defraud him of his interest in the copartnership business.

[1] Conspiracy is not actionable unless the combination results in the perpetration of an unlawful act or of some injurious act by unlawful means. (Bouvier's Law Dictionary; *People* v. *Flack,* 125 N. Y. 324, [11 L. R. A. 807, 26 N. E. 267]; *Herron* v. *Hughes,* 25 Cal. 555.) [2] We have in this complaint only the bare allegation that the defendants entered into a conspiracy to defraud the plaintiff and that the various acts narrated were done for the purpose of defrauding the plaintiff. This is not a sufficient averment of fraud unless connected with a showing of facts which, if true, would support the charge that they were wrongful. There is no showing of any unlawful or wrong-

ful act of the defendants in the alleged transaction down
to and including their purchase of the chattels at the fore-
closure sale.

[3] It may be conceded that Peter Karales, as a mem-
ber of the partnership, had no right or authority to assign
the leasehold of these premises or other operating assets
of the firm, the use of which had been turned over to the
partnership and without which the business of the partner-
ship could not be carried on (Civ. Code, sec. 2430), and that
his assignment of the lease without the consent of the plain-
tiff was as to him a fraudulent act. But it is not alleged
and does not appear that the defendants at the time they
took their chattel mortgage from Peter Karales, before the
copartnership was formed, or when they received as further
security for Karales' indebtedness the assignment of this
lease shortly after the partnership began, had any knowl-
edge that the plaintiff or anyone other than Karales had any
interest in this property. For all that appears they were
innocent encumbrancers in good faith for value. There is
every presumption that this is true so far as the chattel
mortgage is concerned. And, as to the lease, the legal
title stood in Karales' name. It was not until the twenty-
first day of April, 1917, two weeks after the lease was first
assigned to the defendants as additional security, that plain-
tiff claims to have notified them of his copartnership agree-
ment with Karales and his interest in the lease. So far as
the foreclosure suit and judgment are concerned, the de-
fendants under the facts pleaded seem to have been entirely
within their rights. The plaintiff apparently recognized this
by borrowing the money and paying off their liens, and tak-
ing an assignment for his own benefit of the judgment
and lease in the name of Ibbetson, from whom he borrowed
the money.

This transaction cleared the slate as to past events. The
defendants had released all their claims against the partner-
ship property and plaintiff, through Ibbetson, held the as-
signments of the judgment and lease as security for the
money he had been compelled to advance for his copartner's
debts.

The next event in this pastoral drama was inaugurated
by the plaintiff. He and his trustee Ibbetson proceeded
to turn the tables on Karales by advertising a sheriff's sale

under the assigned judgment, at which Ibbetson was to buy in the mortgaged chattels for plaintiff, holding title in himself until the money he had advanced was repaid. Ibbetson, however, only bid the amount of the judgment and the defendants who appeared at the sale raised the bid and bought in the property. This they had a perfect right to do for aught that is shown by the pleadings. Whether or not it was done in connivance with Peter Karales is immaterial so long as it was not a wrongful act. Up to this point no fraud or wrong is shown. The defendants under this sale had acquired a valid title to the chattels and become entitled to their possession.

They had no right, however, to possession of the land or the partnership business. The leasehold interest which they held as security had been satisfied and assigned to the plaintiff's trustee and the right to the use and occupancy of the land was still a partnership asset in the rightful possession of plaintiff. Defendants took no new interest as against the plaintiff ·under the second assignment by Peter Karales and Steve Karales, and their original assignments of this leasehold had already been turned over by them to Ibbetson, and, moreover, the defendants at this time had notice that the plaintiff was in possession under a partnership agreement with Karales which transferred the use and possession of the premises to the copartnership. Such a transfer was void against a purchaser with notice, as to the interests of a nonconsenting partner (*Myers* v. *Moulton,* 71 Cal. 498, [12 Pac. 505]).

[4] The allegation, therefore, of the subsequent ouster of plaintiff by the defendants and the averment that it was done wrongfully and in pursuance of the alleged conspiracy with Karales, and that in pursuance of such wrongful and unlawful purpose they took possession of the dairy ranch, put Karales in charge, converted to their own use the growing crops, and deprived the plaintiff of any further use of the premises under this leasehold furnishes the basis for a cause of action, and the only cause of action stated in the complaint.

The pleader has adopted the narrative form of complaint permitted by section 426 of the Code of Civil Procedure, without, however, putting it in concise language, and with the addition of much surplusage. The allegations relating to the chattel mortgages might have been stricken out as

irrelevant and immaterial, though perhaps some of them have their place in the complaint as matters of inducement, leading up to the unlawful entry and ouster. They were evidently not pleaded as an independent cause of action, since no damages are claimed or alleged for any taking or conversion of the personal property covered by the mortgages.

The damages alleged all pertain to the invasion of the partnership rights in the use and possession of the real property and are set out as separate items of damage arising from a single tort. There is but one cause of action alleged, namely, the wrongful ousting of plaintiff from his business, thus depriving him of the lease, the growing crops, and future profits to his damage in the sum of twenty-five thousand dollars for the use and occupation of the premises; five thousand dollars for the value of his beet crop; four thousand five hundred dollars, the value of the hay and grain crop, and ten thousand dollars demanded as exemplary damages.

In such an action the plaintiff may recover as damages in an amount "which will compensate for all the detriment proximately caused" by the act complained of (Civ. Code, sec. 3333). In *Hawthorne* v. *Siegel,* 88 Cal. 159, [22 Am. St. Rep. 291, 25 Pac. 1114], in which case the plaintiffs ·had been compelled by the wrongful acts of defendants to abandon their barber business in leased premises, this court sustained damages on the single cause of action, for loss of profits and established trade, loss of lease, loss of improvements on the leased premises, loss of a hot-water privilege from adjacent premises, and expenses incident to removal to other quarters.

This action is to be distinguished from *Bowman* v. *Wohlke,* 166 Cal. 121, [Ann. Cas. 1915B, 1011, 135 Pac. 37], cited by respondents. There, there was an attempt to join causes of action arising from distinct tortious acts for injuries to property, to the person, and to the character of plaintiffs. This was in direct conflict with section 427 of the Code of Civil Procedure, as it then read. Here, the injuries complained of are all damages to property, and arise out of one primary wrong, the unlawful taking of the partnership assets by defendants.

[5] The plaintiff here might have brought his action after the ouster for restoration to the possession of the leasehold and the dairy business.

Notwithstanding the partnership was dissolved by the fraudulent acts of the other partner, alleged in the complaint, plaintiff, as the remaining member of the firm, was entitled to continue in the possession and operation of the partnership business and to retain its assets, at least for such time as would permit the business to be closed out in conformity with the agreement of copartnership.

[6] One member of a copartnership by wrongfully violating the terms of his agreement and withdrawing from the copartnership cannot defeat the right of the remaining members to continue in control of the property and the business. (*Mervyn Invest. Co.* v. *Biber,* 184 Cal. 637, [194 Pac. 1037]; *Miller* v. *Brigham,* 50 Cal. 615; *Page* v. *Summers,* 70 Cal. 121, [12 Pac. 120]; *Crossen* v. *Murphy,* 31 Or. 124, [49 Pac. 858]; Civ. Code, sec. 2458.)

But plaintiff also had the right to submit to this wrongful appropriation and conversion of the partnership business and assets by the defendants and his partner Karales, and to bring his action for the damages personally suffered.

[7] In neither form of action would it be necessary to join Karales as a party plaintiff. The partnership was dissolved by the action of Karales in assigning his interests to the defendants and attempting to wreck the business. The rights running to plaintiff were personal, either in his individual capacity or as the sole remaining member of the copartnership. (Parsons on Partnership, 2d ed., 338, 339; *Murray* v. *McGarigle,* 69 Wis. 483, [34 N. W. 522].)

Neither was there a failure of parties defendant by the nonjoiner of Karales. While he was a joint tort-feasor with the defendants, it is not necessary to make all the parties to the tort defendants in an action for damages. (Cooley on Torts, secs. 124–126; *Cheney* v. *Powell,* 88 Ga. 629, [15 S. E. 750].)

We think the complaint sufficiently alleged the right of the copartnership to the use of the leasehold as a partnership asset. The partnership agreement is set out as an exhibit, and recites the possession of this leasehold by Karales and that the partnership is formed to ''carry on the business rendered necessary by the ownership of the' above

properties and to farm and crop the said lease," and there is also alleged in the complaint that by said agreement it was intended that plaintiff and said Karales should farm the land in said lease and conduct thereon a dairy business, and that said agreement of copartnership should continue until the termination of said lease. [8] A formal assignment of the lease to the copartnership was not required. Where one holding a lease of premises enters into a partnership with another agreeing to the use and possession of the leased property in the business, a valid interest in the lease is thereby vested in the partnership. (*Lamb* v. *Hall,* 147 Cal. 44, [81 Pac. 288]; *Stitt* v. *Rat Portage Lumber Co.,* 98 Minn. 52, [107 N. W. 824].)

[9] In the form of action elected by plaintiff 'he can only recover for such damages as would inure to himself individually. Had he retained the business and carried it on under the terms of the partnership agreement he would be held to an accounting to his former partner or his assignees for their proportion of the net profits of the business and its remaining assets.

In the allegation of damages the complaint is perhaps open to demurrer for uncertainty in this respect, but this does not happen to be one of the specifications of uncertainty set forth in defendants' demurrer. In any event, the defendants cannot be prejudiced by allegations in the complaint of greater damages than plaintiff may be entitled to recover.

[10] The prayer for damages itself is not a part of the complaint subject to demurrer, and the fact that plaintiff has prayed for exemplary damages, or any other relief to which he may not be entitled, does not affect the sufficiency of his complaint.

We think this review of the complaint covers all the grounds of demurrer coming within the code provisions and requiring consideration. The complaint is inartificially drawn, and, as we have said, contains much redundant and irrelevant matter, and ambiguity and uncertainty, but the one objectionable feature was not reached by motion to strike, or the other by applicable specifications of insufficiency.

We are of the opinion that facts relating to the ouster of plaintiff and the wrongful invasion and conversion of the

partnership premises and business are sufficiently pleaded, and that facts are stated which support the averments of conspiracy between Karales and the defendants to wrongfully deprive plaintiff of his interest in the leasehold and other remaining partnership assets and business.

The judgment is reversed.

Shaw, J., Shurtleff, J., Lennon, J., and Wilbur, J.. concurred.